IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

TIMOTHY HALL,

        **Plaintiff,**

v.                                                            CIVIL ACTION NO.: 3:24-CV-61
                                                            (GROH)

EASTERN PANHANDLE ANESTHESIA
ASSOCIATES, WEST VIRGINIA UNITED
HEALTH SYSTEM [WVU-BMC], AIR
METHODS, HEALTHNET AEROMEDICAL
SERVICES, BERKELEY COUNTY SCHOOLS,
WEST VIRGINIA DEPARTMENT OF
EDUCATION, NATIONWIDE MUTUAL
INSURANCE CORPORATE OFFICE,
BERKELEY COUNTY COMMISSION,
and BERKELEY COUNTY ASSESSOR,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

Plaintiff's amended complaint alleges claims of wrongful discharge, discrimination, and retaliation against nine defendants. According to Plaintiff, the origin of his claims arose in May 2019 when he was "threatened multiple times by a WVU-BMC employee[.]" Later that year Plaintiff's employer, Eastern Panhandle Anesthesia Associates (EPAA), notified Plaintiff by letter that his employment with EPAA would terminate on February 8, 2020. ECF No. 1-6. As a result of his allegedly wrongful termination, Plaintiff claims various Defendants have violated the Americans with Disabilities Act (ADA), Rehabilitation Act of 1973 (RA), West Virginia Human Rights Act (WVHRA), and West Virginia Patient Safety Act (WVPSA).

**I. West Virginia United Health System, Air Methods, and Healthnet**

Plaintiff filed a joint response to these Defendants' motions to dismiss, so the Court will consider them together here. These Defendants are named in every count except count four of the amended complaint. Amongst other arguments, Defendants aver Plaintiff's claims must be dismissed because they are untimely. The Court agrees.

According to the amended complaint, "Plaintiff was employed by Defendant EPAA as an Anesthesiologist Provider from July 2017 until . . . February 10, 2020." ECF No. 6 at 4. Plaintiff also says the relevant claims were timely presented to the EEOC and his "charge has been closed by letter dated February 21, 2024." Id. at 5. Plaintiff further alleges the EEOC received his complaint "on August 31, 2020." Id. at 15.

The EEOC issued a dismissal and notice of rights on September 11, 2020. ECF No. 21-2 at 2. That letter informed Plaintiff he was required to file a lawsuit against the respondent based on the claims he presented within 90 days of receiving the notice. Id. The February 21, 2024 EEOC letter advised Plaintiff that his "charge was not filed within the time limits under the law; in other words, [he] waited too long after the date of the alleged discrimination to file [his] charge." ECF No. 21-1 at 2.

For purposes of determining whether Plaintiff's claims are timely, the Court finds that summer of 2020, when he alleges his Clinical Professorship lapsed, was the latest point in time that his claims could have arisen. ECF No. 6 at 4. Turning to counts one and two, which are brought pursuant to the ADA, these claims are time-barred because Plaintiff failed to timely file suit from the EEOC's issuance of its September 11, 2020 right to sue letter. ECF No. 21-2 at 2. This is further evidenced by the EEOC's 2024 letter,

referenced in Plaintiff's amended complaint, advising Plaintiff his claims were presented too late.

Turning to the remaining claims, each one is time barred by the applicable statute of limitations. The RA (count three), WVHRA (counts five & six), WVPSA (count seven), and Plaintiff's wrongful discharge claim (count eight) all require a lawsuit to be filed within two years of underlying violation. Mowery v. Logan Cnty. Bd. of Educ., No. 2:11-CV-00050, 2012 WL 895921, at *2 (S.D. W. Va. Mar. 15, 2012) ("Because the ADA and RA do not contain statutes of limitations, courts use the most analogous state action to provide the limitations period. . . . Because the policies under the WVHRA are similar to the protections provided under the RA and the ADA, the statute of limitations for the WVHRA is applicable to those claims. The statute of limitations for WVHRA claims is two years."); W. Va. Code § 16-39-6(c); Coleman v. Hous. Auth. of City of Weirton, No. 5:12CV151, 2014 WL 320179, at *3 (N.D. W. Va. Jan. 29, 2014) ("Wrongful discharge is a tort action. Accordingly, under West Virginia Code § 55–2–12(b) (the default statute of limitations for personal injury claims), the statute of limitations runs after two years." (cleaned up) (citing Conaway v. Eastern Associated Coal Corp., 358 S.E.2d at 427 (W. Va.1986) and Harless v. First Nat'l Bank, 246 S.E.2d 270, 275 n.5 (W. Va.1978))).

Plaintiff filed his complaint in this Civil Action nearly *four* years after the events giving rise to his claims took place—well beyond the two-year statute of limitations for these claims. Accordingly, the claims against these Defendants are time barred and shall be dismissed. Even if Plaintiff's claims were not time barred, the Court would nonetheless

dismiss each count for failing to state a claim against these Defendants for the reasons more fully articulated in their motions to dismiss.

## II. Berkeley County Board of Education

In his amended complaint, Plaintiff alleges only EPAA was his employer. There is no allegation whatsoever that Berkeley County Board of Education (BCBOE)[1] ever employed Plaintiff. As a result, Plaintiff's claims in counts one, two, five, six, and eight fail as a matter of law. See Jacobs v. N.C. Admin Office of the Courts, 780 F.3d 562, 572 (4th Circ. 2015); State ex rel Grant Cty Commission v. Nelson, 244 W. Va. 649, 856 S.E.2d 608 (2024). BCBOE must be dismissed from these counts.

As to count three, the Court agrees with BCBOE that Plaintiff has failed to identify any program or activity of this Defendant to which he was denied access. Instead, the wrongful conduct alleged in paragraph 60 of the amended complaint refers to actions that were all allegedly taken by EPAA. Thus, BCBOE must be dismissed from count three.

Turning to count seven, BCBOE is not a health care facility. In West Virginia, "[h]ealth care entity" is defined to include "a health care facility, such as a hospital, clinic, nursing facility, or other provider of health care services." W. Va. Code § 16-39-3. "Health care facility" is further defined as "(1) A hospital licensed pursuant to § 16-5B-1 *et seq.* of this code; (2) A nursing home licensed pursuant to § 16-5C-1 *et seq.* of this code; (3) An assisted living residence licensed pursuant to § 16-5D-1 *et seq.* of this code; and (4) Hospice licensed pursuant to § 16-5I-1 *et seq.* of this code." Id.

---

[1] BCBOE is named as "Berkeley County Schools" in the amended complaint.

Plaintiff does not, nor could he, plead that BCBOE is a health care facility as defined within the WVPSA. Even if it could be considered a health care facility and Plaintiff advanced that allegation, the Amended Complaint contains no allegation that Plaintiff complained concerning wrongdoing or waste to BCBOE pertaining to any healthcare related activity of the Board. Because BCBOE is not a health care facility, Plaintiff's claims under count seven fail as a matter of law. For these reasons and the arguments more fully articulated in the motion to dismiss, the Court concludes that Plaintiff's claims against BCBOE must be dismissed.

### III. Berkeley County Commission and Berkeley County Assessor

The County Commission and Assessor (County Defendants) move to dismiss the amended complaint under Rule 12(b)(5) for insufficient service of process. ECF No. 27. They argue Plaintiff never properly served either of them because he was not permitted to effectuate service through the Secretary of State. In response, Plaintiff contends service was properly made because the County Defendants are state agencies that may be served by the Secretary of State under Rule 4. But as Defendants point out in their reply, they are political subdivisions not "state agencies." See, e.g., Gooden v. County Comm'n, 171 W. Va. 130, 131, 298 S.E.2d 103, 104 (1982) (county commissions are not instrumentalities of the State of West Virginia).

Federal Rule of Civil Procedure 4(j)(2) provides, "A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive

officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."

Under West Virginia law, a plaintiff suing a county commission is required to effectuate service upon "any commissioner or the clerk thereof. if they be absent, to the prosecuting attorney of the county." W. Va. R. Civ. P. 4(d)(4)(b)(2); W. Va. Code § 56-3-13(b). Plaintiff did not properly effectuate service upon the County Defendants.

Plaintiff asked the Court if it reached this conclusion for an "opportunity to remedy any such defect promptly." ECF No. 49 at 7. When a defendant is not properly served, the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4. But, "[i]f service would be futile because a plaintiff's claim fails as a matter of law, the court should not grant a plaintiff additional time to effect proper service." Frazier v. DolgenCorp, LLC, No. 9:21-CV-0135-DCN, 2021 WL 2269962, at *1 (D.S.C. June 3, 2021) (collecting cases).

Here, it would be futile to provide Plaintiff an opportunity to cure the defect in serving these Defendants. Simply put, the Court's review of the claims against these Defendants reveal they would befall the same fate as those against the Defendants above—for the same reasons. In other words, Plaintiff's complaint falls short of the Rule 12(b)(6) standard, so even if Defendants were properly served, they would still be dismissed. However, the Court notes that because the County Defendants filed their motion under Rule 12(b)(5), the claims against them will be dismissed *without* prejudice.

## IV. West Virginia Department of Education

In its motion to dismiss, the West Virginia Department of Education (WVDE) argues it is entitled to sovereign immunity and, even if it were not, Plaintiff fails to state a claim upon which relief can be granted against it. See ECF No. 29-1 at 1. In his response, Plaintiff does not contest the legal framework WVDE outlines in its motion. Instead, he contends these claims should survive within that framework. ECF No. 52 at 16.

WVDE explains that Congress can only abrogate the Eleventh Amendment's immunity by "stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 484 (4th Cir. 2005). Although Congress expressed a desire to abrogate Eleventh Amendment immunity for violations of the ADA, see 42 U.S.C. § 12202, the Supreme Court has held an attempt at abrogation is valid only in limited circumstances and turns on the nature of the ADA claim at issue. Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 367–68 (2001). See also, Tennessee v. Lane, 541 U.S. 509, 518 (2004).

Although the amended complaint lacks specificity on this point, Plaintiff's response claims WVDE "violated the Fourteenth Amendment when they chose to ignore and refuse to address internal breaches and unlawful dissemination of personally identifiable information entrusted to their agency not only by not providing equal protection but also by drawing distinctions against the Plaintiff's wife which were discriminatory by association to the Plaintiff through retaliation outside of the workplace." ECF No. 52 at 14.

In discussing the ADA's abrogation of sovereign immunity, the Supreme Court recognized that "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001). There are two situations under Section 5 of the Fourteenth Amendment that allow Congress to abrogate sovereign immunity: (1) for "cause[s] of action for damages against the States for conduct that actually violates the Fourteenth Amendment," U.S. v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original); and (2) for "so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct[.]" Lane, 541 U.S. at 518.

WVDE argues that Plaintiff offers no identifiable constitutional issues regarding his claims because he has failed to specify the right or rights that Congress sought to enforce when it enacted Title II of the ADA in relation to the claims in this civil action. The only allegation Plaintiff makes against WVDE is that it obstructed an investigation related to dissemination of his wife's personal information. But, as WVDE asserts, that is a claim Plaintiff lacks standing to bring here.

Moreover, the amended complaint lacks any Fourteenth Amendment violations; it merely presents conclusory claims. Other courts in the Fourth Circuit have held that Title II of the ADA does not abrogate sovereign immunity. See Chase v. Baskerville, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007); Belk v. Jones, No. 1:10CV724, 2013 U.S. Dist. LEXIS 139584, at *26 (M.D.N.C. Sep. 26, 2013).

Simply put, Plaintiff has not provided any factual allegations to support a claim of disability discrimination, nor has he identified any violation of rights under Title II.

Permitting Plaintiff to enforce his wife's alleged rights related to data dissemination under Title II of the ADA is not a congruent and proportional response to abrogate sovereign immunity, as established in Chase, Belk, and Garrett.

Moreover, even assuming *arguendo* Plaintiff could meet this burden, the Court finds his amended complaint fails to state a claim upon which relief can be granted against WVDE. The amended complaint is simply devoid of factual allegations that could substantiate or even support the allegations within each count.

### V. Eastern Panhandle Anesthesia Associates

In its motion to dismiss, Eastern Panhandle Anesthesia Associates (EPAA) alternatively ask the Court to compel arbitration. This request is made pursuant to an arbitration provision within Plaintiff's employment contract with EPAA. See ECF No. 32. EPAA notes that the Circuit Court of Berkeley County previously ordered Plaintiff to arbitrate similar claims before it, but arbitration never took place. Plaintiff's response focuses on the prior state court proceedings but wholly fails to address the arbitration provision within his employment contract.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). This policy is supported by Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation.

9

Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001). Therefore, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)).

In considering a motion to compel arbitration, the Court applies the same standard as a motion for summary judgment. See Rowland v. Sandy Morris Fin. & Est. Planning Servs., LLC, 993 F.2d 253, 258 (4th Cir. 2021). The party seeking to compel arbitration "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless sufficient evidence exists that favors the nonmoving party and would allow a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In making this determination, courts must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Nevertheless, "permissible inference must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests *merely upon speculation and*

*conjecture*." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (emphasis added) (internal quotations omitted). Judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).

By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law must be denied. Id. at 489-90. Thus, under the FAA, the party seeking a jury trial "must show *genuine* issues of material fact regarding the existence of an agreement to arbitrate." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 (4th Cir. 2016) (emphasis added). In determining whether a genuine issue exists, the Court may rely only on facts supported in the record, not simply assertions in the pleadings. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Generally, a district court applies "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA." Id. (citations omitted). However, a district court applies ordinary state law principles governing the formation of contracts, "including principles concerning the validity, revocability, or enforceability of contracts." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013) (internal citations omitted). Section 2 of the FAA provides that arbitration agreements may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be

invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 349 (2011) (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

> To compel arbitration under the FAA, the Fourth Circuit requires the moving party
>
>> demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins, 303 F.3d at 500-01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). "Under the FAA, courts must stay any suit 'referable to arbitration' under an arbitration agreement, where the court has determined that the agreement so provides, and one of the parties has sought to stay the action." Noohi v. Toll Bros., Inc., 708 F.3d 599, 604 (4th Cir. 2013).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Zandford v. Prudential-Bache Sec., Inc., 112 F.3d 723, 727 (4th Cir. 1997)

(citations and internal quotation marks omitted). "Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

Here, there is a clear and enforceable arbitration provision in the agreement between Plaintiff and EPAA. See ECF No. 32-2 at 12. Plaintiff offered no argument against the enforceability of the arbitration provision, and this Court finds no reason it cannot or should not be enforced.

Having found an enforceable arbitration agreement exists and arbitration should therefore be compelled, the only remaining issue before this Court is whether to stay or dismiss this civil action as to EPAA. Looking only to the statute, the relevant section of the FAA provides that

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

However, as noted by the Fourth Circuit, tension exists within the Circuit's precedent as to whether a stay or dismissal is appropriate when all claims in a matter are subject to arbitration. Noohi, 708 F.3d at 605 n.2. Indeed, the Defendants' motion requests that this Court stay or dismiss the case.

13

Beginning in 2001, the Fourth Circuit has flip flopped on whether a stay or dismissal is appropriate. Indeed, the Fourth Circuit has flip flopped even within the same year. In March 2001, in Bankers, the Circuit cited the FAA's requirement to stay proceedings when an issue is arbitrable and held that "[i]f the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001). Then, just three months later, the Fourth Circuit held that "[n]otwithstanding the terms of § 3, ... dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc, v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

Upon review of Fourth Circuit precedent before and after Choice Hotels, this Court finds that most Fourth Circuit precedent supports the issuance of a stay when all issues in a case are arbitrable. E.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999); Bankers, 245 F.3d at 319; Adkins, 303 F.3d at 500; Noe v. City Nat'l Bank of W. Va., 828 F. App'x 163, 165 (4th Cir. 2020). But see Choice Hotels, 252 F.3d at 709-10; Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 584 (4th Cir. 2012 (citing Choice Hotels)). This principle is bolstered by the text of the FAA directing courts to issue a stay. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.")

Of all the Fourth Circuit precedent governing this issue, this Court finds substantial guidance from <u>Adkins</u>, as it was decided just one year after <u>Choice Hotels</u>, and is an oft-cited decision by courts applying the Fourth Circuit's standard for whether parties should be sent to arbitration.[2] In <u>Adkins</u>, the Fourth Circuit held that the "stay-of-litigation provision is mandatory." 303 F.3d at 500. Given the weight of the precedent supporting a stay as the proper avenue of relief, including the Fourth Circuit's declaration in <u>Adkins</u>, shortly after <u>Choice Hotels</u>, the Court similarly finds that a stay is the appropriate counterpart to a motion to compel arbitration. Therefore, this matter shall be stayed as to Defendant EPAA pending arbitration.

## VI. Nationwide Mutual Insurance Company

In paragraph 46 of the amended complaint, Plaintiff explains he has a "life insurance policy through Nationwide Mutual Insurance Company . . . ." ECF No. 6 at 27. In the same paragraph, Plaintiff explains his "personal life insurance policy address was changed without authorization and re-routed to an unknown address . . . ." <u>Id.</u> This, in essence, summarizes Plaintiff's allegations against Nationwide.

In its motion to dismiss, Nationwide aptly notes Plaintiff's claims under the ADA, RA, WVHRA, WVPSA, and for wrongful discharge fail as a matter of law because Nationwide was not Plaintiff's employer.[3] Accepting Plaintiff's well pleaded allegations as

---

[2]  A Westlaw search shows over four hundred cases citing <u>Adkins</u> as the source for the Fourth Circuit's four-factor test governing motions to compel arbitration.

[3]  Although Nationwide also makes an argument that Plaintiff's Fair Housing Act claim fails because Nationwide and Plaintiff never engaged in any sale, rental, or financing of any housing-related transaction, the Court need not explore this claim because it finds Plaintiff only named the Berkeley County Commission and Assessor in count four. Nonetheless, the claims would fail against Nationwide had it been named in count four of the amended complaint.

true, the amended complaint fails to state a claim against Nationwide upon which relief can be granted. Nationwide apparently issued Plaintiff's life insurance policy. Nothing about this fact, in view of every allegation, establishes even a potentially plausible claim under any of Plaintiff's counts. Plaintiff's claims against Nationwide must be dismissed with prejudice.

## VII. Conclusion

For the reasons more fully stated above and presented by Defendants in their filed papers, the Court **ORDERS** the following:

Air Methods's Motion to Dismiss [ECF No. 18] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**;

West Virginia University's Motion to Dismiss [ECF No. 20] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**;

HealthNet Aeromedical Services's Motion to Dismiss [ECF No. 22] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**;

Berkeley County Board of Education's Motion to Dismiss [ECF No. 24] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**;

Berkeley County Assessor and Berkeley County Commissioner's Motion to Dismiss [ECF No. 27] is **GRANTED**, and the claims against them are **DISMISSED WITHOUT PREJUDICE**;

West Virginia Department of Education's Motion to Dismiss [ECF No. 29] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**;

Eastern Panhandle Anesthesia Associates's Motion to Compel Arbitration [ECF No. 31] is **GRANTED**, and this Civil Action is **ORDERED STAYED as to EPAA only** pending arbitration of Plaintiff's claims against it;[4] and

Nationwide Mutual Insurance Corporate Office's Motion to Dismiss [ECF No. 68] is **GRANTED**, and the claims against it are **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to mail a copy of this Order to the Plaintiff by certified mail, return receipted requested, to his last known address as reflected on the docket sheet and to transmit copies of this Order to counsel of record by electronic means.

**DATED**: August 27, 2025

GINA M. GROH
UNITED STATES DISTRICT JUDGE

---

[4] The parties are **DIRECTED** to advise the Court of the status of the arbitration proceedings **every 90 days**, beginning 90 days from the date of this Order. **Failure to advise the Court of the status or Plaintiff's failure to promptly pursue arbitration will likely result in dismissal with prejudice**.